409 P.2d 566

JOHNSON & DOUGLAS, Attorneys at Law, Petitioner,

v.

SUPERIOR COURT of the State of Arizona and R. C. Stanford, Jr., as Presiding Judge, Respondents.

No. 1 CA–CIV 112.

Court of Appeals of Arizona.

Jan. 5, 1966.

Rehearing Denied Feb. 2, 1966.

Review Granted Feb. 16, 1966.

Johnson & Douglas, by N. Pike Johnson, Jr., Pasquale R. Cheche, Phoenix, for petitioner.

Robert K. Corbin, Maricopa County Atty., by John A. Golden and Ralph E. Willey, Deputy County Attys., for respondents.

Lewis, Roca, Scoville, Beauchamp & Linton, by John J. Flynn, Monroe G. McKay, Phoenix, amici curiæ.

STEVENS, Chief Judge.

This opinion relates to the allowance of attorney's fees for counsel appointed to represent a defendant in a criminal case. This matter was entertained by this Court for the reason that it relates to a matter of great public interest and for the further reason that the order which is the subject of this opinion is one for which there is no plain, speedy or adequate remedy of review by appeal.

N. Pike Johnson, Jr., and Edward W. Douglas are members of the Bar of the State of Arizona. On 27 August 1964, Mr. Johnson was appointed to represent an indigent defendant, one Charles Troy Coleman, in Maricopa County Criminal Cause No. 44711, the order having been made by a Judge of the Superior Court. Prior to Mr. Johnson's appointment, Coleman had been bound over to the Superior Court. Mr. Johnson was successful in securing the referral of this case to the magistrate for a new preliminary hearing which Mr. Johnson attended. Mr. Johnson appeared in the Superior Court on five different occasions and on two of these occasions he presented arguments on motions. Mr. Johnson was successful in his efforts on behalf of his client in that the charges were eventually reduced from a felony to a misdemeanor to which Coleman entered a plea of guilty.

Section 13–1673 A.R.S. is as follows:

"When counsel is appointed by the court and represents the defendant in either a criminal proceeding or insanity hearing, he shall be paid by the county in which the court presides, provided that in those matters where a public defender is appointed, no compensation shall be paid by the county. Compensation for such services rendered to defendant shall be such amount as *the court* in its discretion deems reasonable, considering the services performed. As amended Laws 1964, ch. 43, § 3." (Emphasis supplied.)

The Constitution of the State of Arizona vests the judicial power in an integrated judicial department including the Supreme Court, the newly created Court of Appeals, the Superior Court and the Justice Courts. Section 1 of Article VI, as amended, 1 A.R.S. Section 3 of Article VI, as amended, provides in part:

"The Supreme Court shall have administrative supervision over all the courts of the state. * * *"

"The chief justice * * * shall exercise the court's administrative supervision over all the courts of the state. * * *."

A portion of the amended article in relation to the Superior Court is found in Section 11 which section is as follows:

"There shall be in each county a presiding judge of the superior court. In each county in which there are two or more judges, the Supreme Court shall appoint one of such judges presiding judge. Presiding judges shall exercise administrative supervision over the superior court and judges thereof in their counties, and shall have such other duties as may be provided by law or by rules of the Supreme Court."

This Court takes judicial notice of the fact that during the year 1963 there were four counties within the State of Arizona in which there were two or more resident Superior Court Judges and that the Honor-

able R. C. Stanford, Jr. was the duly designated Presiding Judge for Maricopa County during all times material to this opinion. The record before us establishes that by a written document dated 4 January 1963, the following order was transmitted by the Supreme Court to the Superior Court for Maricopa County:

"It is Ordered, effective the date hereof, that every application for compensation for services rendered to a defendant in a criminal proceeding in the Superior Court in Maricopa County by counsel appointed by the Court *shall be submitted to the Presiding Judge* who shall determine the amount of compensation in accordance with Section 13–1673, Arizona Revised Statutes." (Emphasis supplied.)

This Court is not informed that a like order was directed to the Judges of the Superior Court of any other multi-judge county. When Mr. Johnson successfully completed his services in relation to his client, he submitted a claim form to Presiding Judge Stanford setting forth the nature of services which he had rendered. These services consisted of research, draftsmanship, conferences and court appearances with a time expenditure of 25½ hours.

The stipulation of facts presented to this Court contains among other recitations, the following statements:

"That subsequent to the presentation of the aforementioned claim, respondent Superior Court, acting by and through the Honorable R. C. Stanford, Jr., as Presiding Judge, designated and authorized the sum of $50.00 as the amount to be paid to petitioner for said services under said claim.

"That there presently exists a *de facto* limitation of $50.00 as the maximum amount to be authorized as payment to attorneys appointed by the Superior Court to defend indigent defendants, when the outcome of such representation is a plea of guilty or a dismissal without trial.

"That respondent Superior Court, acting by and through the Honorable R. C. Stanford, Jr., as Presiding Judge, designated and authorized the amount of $50.00 as payment in this case pursuant to the aforementioned limitation."

At the argument of this cause this Court was informed that the stipulation had been approved by Judge Stanford.

This Court heretofore issued an alternative writ of mandamus. It is urged by the petitioner that the alternative writ be made peremptory to compel the respondent court to exercise "its discretion" and to allow such fee as it "deems reasonable" without being hampered or controlled by any de facto limitation.

Several motions have been addressed to these proceedings which have heretofore been ruled upon and which we do not deem necessary to review.

It is urged that the petition should be dismissed for the reason that there is an adequate remedy by appeal. With this contention, we do not agree. Appeals are processed by parties to judicial proceedings. The petitioner was not a party to the Superior Court case of State v. Coleman.

The convenient procedure after the trial court's final disposition of the criminal case (exclusive of an appeal) is to make an informal application in the form of a verified claim (in this instance with reference to Criminal Cause No. 44711) so that the appropriate judge may determine the amount to be allowed and approve the claim in that amount. It has been suggested that the attorney should file a civil suit rather than engage in this informal procedure. In our opinion this is neither necessary nor appropriate. Counsel should not be required to burden the courts with new litigation to enable them to seek their fees. Frequently the amount involved is less than $200.00 and therefore within the exclusive civil jurisdiction of the Justice Courts. The statutes expressly vest in the Superior Court the power to fix the fee. In our

opinion, there is no inconsistency in a grant of continuing jurisdiction to enter an order fixing fees as an incident to a criminal case after the criminal cause has been terminated. For example, Section 13–1720 A.R.S. expressly states that,

"After a certified copy of the minute entry and a copy of the decision of the supreme court in a criminal appeal has been remitted to the trial court from which the appeal was taken, the supreme court *shall have no further jurisdiction of the appeal*, or of the proceeding thereon." (Emphasis supplied.)

This statute applies equally to the Court of Appeals. The minute entry is commonly called "The Mandate". Notwithstanding this lack of "further jurisdiction of the appeal" Section 13–1721, as amended, extends the fee fixing jurisdiction by allowing the court which exercises appellate jurisdiction to fix a reasonable attorney's fee without the necessity of this act being performed prior to the forwarding of the said certified copy.

We have not been informed as to any rule or statute which permits an appeal from an order of the nature we have under consideration and we have not found one. We hold that there is no plain, speedy or adequate remedy by appeal and that this matter is one of great public interest warranting the exercise of the jurisdiction required for the issuance of an Extraordinary Writ.

A question has been raised concerning the authority of the Arizona Supreme Court to adopt a Rule of Procedure which applies to one, but not to all of the counties wherein there is a Presiding Judge. In relation to the statutory directive that "the court" fix the fee, it is our opinion that in those instances wherein there is a criminal case pending in the Superior Court, the fee fixing authority vests in the Superior Court Judge who took the final action in the case, be it a sentence or a dismissal. In those instances wherein a lawyer has been designated to render a service which service was completed by action tak-

en in the justice court, it is our opinion that any Superior Court Judge has the power to entertain the claim although the judges might prefer to select one of their number to be the primary one to exercise this authority.

■ Rule 163 of the Rules of Criminal Procedure, 17 A.R.S., provides in part as follows:

> "Before the defendant is arraigned on a charge of felony, if he is without counsel, the court shall ask him if he desires the aid of counsel and if he answers in the affirmative, and declares, under oath, that he has no means to employ counsel, the court shall assign counsel to represent him in the action."

Prior to the case of State v. Anderson, 96 Ariz. 123, 392 P.2d 784 (1964) many lawyers and judges believed that there was no power to appoint an attorney to represent an indigent except in relation to felonies and then only in relation to matters before the Superior Court. Anderson established the absence of such a limitation. By the adoption of Section 13–1673, the Legislature established the public policy that appointed counsel representing an indigent accused is eligible for reasonable compensation. We do not hold that the preliminary hearing in Arizona is a "critical stage" of a criminal case as that term is used in the case of White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). We do hold that it is wholly appropriate for attorneys to be appointed to represent indigent defendants at the preliminary hearing stage and that this appointment or designation can be made by a Superior Court Judge or a court officer designated by and under the supervision of a Superior Court Judge without the defendant having been first bound over and charged in the Superior Court, the case thereafter being "remanded for a preliminary hearing". We hold that an attorney so appointed or designated is entitled to submit a claim for his services to a Judge of the Superior Court even though he be successful in disposing of the case at the justice court stage of the proceedings. The services of Mr. Johnson rendered on behalf of Coleman, in the justice court in relation to the claimed felony, were entitled to be considered in relation to the amount of the fee allowed by whichever Superior Court Judge passed upon Mr. Johnson's request for reasonable compensation.

■ We recognize that an attorney who is appointed will not be compensated in the same manner as would one who is privately employed to render the same service. A substantial portion of the service rendered by appointed counsel is rendered as a public service incident to the privilege of practicing law. Public policy has been declared by the Legislature that reasonable compensation be paid. While we are not called upon to determine the amount which it would be appropriate to allow to Mr. Johnson for his services in the Coleman matter, it is our opinion that a de facto limit of $50 in relation to the quantity and quality of Mr. Johnson's service illustrates the unreasonableness of that limitation and that the fee allowed is not in accord with either the letter or the spirit of the statute.

The advent of Maricopa County's implementation of the statute authorizing the appointment of a Public Defender does not render moot the question which we have under consideration. Section 13–1673 provides "that in those matters where a public defender is appointed, no compensation shall be paid by the county". It is nevertheless necessary to appoint counsel even in those counties wherein there is a Public Defender, a typical example being a situation wherein there are two or more defendants jointly charged and there is a conflict of interests.

■ We do not determine the fee which should have been allowed. We determine only that the judge who fixes the fee must exercise his own independent wisdom and discretion based upon the particular facts of each case, and he may not be hampered or limited in his determination of the

amount of the fee to be awarded by any "de facto" limitation or agreement.

The alternative writ of mandamus is made peremptory in that the Superior Court in Maricopa County whether acting through Judge Stanford, Judge McFate, his successor as Presiding Judge, or any other Superior Court Judge having the responsibility for fixing Mr. Johnson's fee, shall undertake that responsibility free of any arbitrary limitation and in the exercise of its own independent wisdom, judgment and discretion.

CAMERON and DONOFRIO, JJ., concurring.